**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAMONA MATOS RODRIGUEZ, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> PAN AMERICAN HEALTH ORGANIZATION, *et al.*, <br><br> *Defendants*. | Civil Action No. 20-cv-928-JEB |

**PUTATIVE DEFENDANT PAN AMERICAN HEALTH ORGANIZATION'S**
**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION TO CONFIRM**
**THAT DISCOVERY ORDER IS STAYED PENDING APPEAL**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................. ii

BACKGROUND AND PROCEDURAL HISTORY ......................................................... 2

ARGUMENT ................................................................................................................... 4

I.     THIS COURT SHOULD CONFIRM THAT DISCOVERY WAS STAYED AUTOMATICALLY WHEN PAHO APPEALED THIS COURT'S DISCOVERY ORDER ................................................ 4

II.    ALTERNATIVELY, A STAY PENDING APPEAL IS WARRANTED UNDER THE TRADITIONAL FOUR-FACTOR TEST ........................................................................................ 5

      A.    PAHO Would Suffer Irreparable Harm Absent A Stay ........................................ 6

      B.    Plaintiffs Will Not Suffer Any Cognizable Harm From A Stay ........................... 7

      C.    A Stay Will Serve The Public Interest .............................................................. 8

      D.    PAHO's Appeal Presents At Least Serious Legal Questions ............................. 8

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014)................................................................6

*Akiachak Native Community v. Jewell*, 995 F.Supp.2d 7 (D.D.C. 2014) .........................7

*Alabama Association of Realtors v. United States Department of Health & Human Services*, 539 F.Supp.3d 211 (D.D.C. 2021).......................................................5, 8

*Archdiocese of Washington v. Washington Metropolitan Area Transit Authority*, 897 F.3d 314 (D.C. Cir. 2018)........................................................................6

*Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009) ........................................................9

*Center for International Environmental Law v. Office of U.S. Trade Representative*, 240 F.Supp.2d 21 (D.D.C. 2003) ...................................................7

*Cigar Association of America v. FDA*, 317 F.Supp.3d 555 (D.D.C. 2018)..................6, 8

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023)..................................................................5

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C. Cir. 1990) .......................................................................................................1

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982)....................................1

*International Refugee Organization v. Republic S.S. Corp.*, 189 F.2d 858 (4th Cir. 1951) .......................................................................................................8

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997) .......................................................................................................9

*Krell v. Queen Anne's County*, 2020 WL 416975 (D. Md. Jan. 27, 2020)......................8

*Lockyer v. Mirand Corp.*, 398 F.3d 1098 (9th Cir. 2005)................................................8

*NAACP v. Trump*, 321 F.Supp.3d 143 (D.D.C. 2018)......................................................6

*Nken v. Holder*, 556 U.S. 418 (2009) ..............................................................................5

*Nyambal v. International Monetary Fund*, 772 F.3d 277 (D.C. Cir. 2014)..................10

*Philipp v. Federal Republic of Germany*, 436 F.Supp.3d 61 (D.D.C. 2020)..................7

*Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000)............6

*Population Institute v. McPherson*, 797 F.2d 1062 (D.C. Cir. 1986)..............................8

*Princz v. Federal Republic of Germany*, 998 F.2d 1 (D.C. Cir. 1993)........................................1, 5

*Rodriguez v. Pan American Health Organization*, 29 F.4th 706 (D.C. Cir. 2022) ....................3, 9

*United States v. Philip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003).................................................7

*United States v. Trump*, 706 F.Supp.3d 91 (D.D.C. 2023) ...............................................................5

*Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559
    F.2d 841 (D.C. Cir. 1977) ...........................................................................................6, 9, 11

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)...........................................5

### DOCKETED CASE

*Nyambal v. International Monetary Fund*, No. 1:12-cv-1037 (D.D.C.)...................................7, 10

*Rodriguez v. PAHO*, No. 20-7114 (D.C. Cir. June 14, 2021)..........................................................3

### STATUTES

18 U.S.C. §1589(b) ..........................................................................................................................2

28 U.S.C. §1605(a)(2)......................................................................................................................2

Putative defendant the Pan American Health Organization ("PAHO") specially appears without waiving its jurisdictional defenses and hereby moves this Court to confirm that PAHO's appeal of the Court's August 12, 2024 order in this litigation (Dkt. No. 113), automatically stayed that order (including the September 27, 2024 deadline for the parties to file a joint status report) pending the appeal.  Alternatively, PAHO moves this Court to stay that order, and vacate the September 27, 2024 joint-status-report deadline ordered therein, for the reasons set forth below.

PAHO's appeal "'divest[ed this] court of its control over those aspects of the case involved in the appeal,'" meaning "the district court may not proceed [on those aspects] until the appeal is resolved." *Princz v. Federal Republic of Germany*, 998 F.2d 1, 1 (D.C. Cir. 1993) (Wald and R.B. Ginsburg, JJ.) (per curiam order) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam)).  Here, those "aspects of the case" include the Court's discovery order. The Court should thus confirm—through either the actual issuance of a stay or the issuance of the notice just mentioned—that it will not proceed on the issues pending before the D.C. Circuit until PAHO's appeal is resolved.

A stay is warranted to the extent the Court has jurisdiction to issue one because all the traditional factors governing stays pending appeal support a stay here.  First, forcing PAHO to respond to plaintiffs' discovery requests while the D.C. Circuit resolves whether any response may be compelled consistent with the International Organizations Immunities Act ("IOIA") would irreparably deprive PAHO of its immunity from the "burdens of litigation," *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990).  Second, plaintiffs will not be harmed by a stay because their action seeks only monetary damages.  Third, a stay will serve the public interest by protecting the immunities Congress granted to international organizations like PAHO through the IOIA, immunities that allow those organizations to provide the myriad services

that benefit the public without fear of being subjected to jurisdictionally unfounded lawsuits and the discovery and other burdens they impose.  Lastly, PAHO's appeal will show that PAHO cannot be required to produce burdensome discovery where the documents already in the record defeat the one theory of jurisdiction that this Court and the D.C. Circuit have held to be plausibly alleged.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs sued PAHO and others under the Trafficking Victims Protection Act ("TVPA") and Racketeer Influenced and Corrupt Organizations Act ("RICO"), alleging that PAHO participated in—and benefited from—plaintiffs' alleged forced labor through PAHO's role in the Brazilian government's public-health program Mais Médicos.  Second Am. Compl. ¶¶127-145. Ruling on PAHO's first (facial) motion to dismiss, Dkt. 54, this Court recognized PAHO's immunity from most of plaintiffs' claims, allowing only a single TVPA claim based on PAHO's alleged receipt of a "benefit[] … from participation in a [trafficking] venture," 18 U.S.C. §1589(b), to proceed (along with the concomitant RICO claim).  Dkt. 69 at 14-15, 30, 55.  The Court allowed that claim to proceed based on plaintiffs' allegation that PAHO (in the Court's words) "mov[ed] … money, for a fee, between Cuba and Brazil"—an allegation that, taken as true, the Court deemed sufficient to allege commercial activity for purposes of the IOIA's commercial-activity exception. *Id.* at 14-15, 30.  As for the exception's requirement that the alleged commercial activity be "carried on in the United States," 28 U.S.C. §1605(a)(2), the Court deemed it satisfied by allegations that PAHO "carried out its agreed-to role as financial intermediary using its Citibank account in Washington, D.C." and that PAHO's Director General "based out of PAHO's headquarters in this city, approved the agreements committing PAHO to its role as intermediary."  Dkt. 69 at 16.

The D.C. Circuit affirmed, holding that—again accepting the complaint's well-pleaded factual allegations as true—plaintiffs' section 1589(b) claim is based on alleged commercial

activity allegedly carried on in the United States, "to wit: PAHO received, forwarded and retained the *Mais Médicos* money through its Washington, D.C. bank account." *Rodriguez v. Pan American Health Organization*, 29 F.4th 706, 715-716 (D.C. Cir. 2022).  The court of appeals emphasized, however, that it was holding "only that the physicians have made sufficient allegations to survive dismissal; the district court retains the authority to reassess its jurisdiction as the litigation progresses." *Id*. at 717.

On remand, PAHO filed a factual motion to dismiss for lack of subject matter jurisdiction based on its IOIA immunity, supported by overwhelming factual evidence fatal to plaintiffs' lone surviving theory of jurisdiction.  Dkt. 80.  PAHO appended to its motion documents and declarations disproving plaintiffs' key factual allegations, on which this Court and the D.C. Circuit had relied in finding jurisdiction as a facial matter.  *See* Dkt. 80.  In particular, PAHO's motion and evidence show that PAHO did not "mov[e] … money, for a fee, between Cuba and Brazil," Dkt. 69 at 14, but instead engaged in the non-commercial activity of administering a public-health program for sovereign member states, and did not receive any fee for any service such as moving money between Brazil and Cuba; rather, the Brazilian government reimbursed PAHO only for program support costs ("PSC"), i.e., a standardized reimbursement to international organizations to help offset indirect costs and overhead incurred in connection with public health projects such as Mais Médicos.  *See* Dkt. 80 at 17-18, 30; Dkt. 80-3 (Coral Decl.) ¶¶13, 19, 26-28.  (The United States' brief to the D.C. Circuit in PAHO's appeal explained that an international organization's receipt and retention of PSC payments is not commercial activity.  Brief for United States as Amicus Curiae 17-18, *Rodriguez v. PAHO*, No. 20-7114 (D.C. Cir. June 14, 2021) (hereafter U.S. Amicus Brief).)  The allegations of a U.S. nexus through U.S. banks are also false because, as PAHO's

evidence shows, the payments from Brazil to PAHO and from PAHO to Cuba in connection with Mais Médicos passed only through bank accounts in Brazil and Cuba. *See* Dkt. 80 at 36-39.

Rather than oppose PAHO's motion to dismiss, Plaintiffs propounded dozens of discovery requests, most of which were untethered to their only surviving theory of jurisdiction. *See* Dkt. 81 at 2-3. Following weeks of conferral, PAHO attempted to reach a compromise by providing plaintiffs yet more evidence, including another declaration and more than a thousand additional pages of documents. Dkt. 93-1, Bowker Decl. ¶¶11-12 & Exs. G at 1, H, I. The declaration and additional documents, including years of bank statements covering all relevant payments to and from Cuba and Brazil, further demonstrate (among other things) that all banking transactions between and among PAHO, the Brazilian government, and the Cuban government were made using bank accounts in either Brazil or Cuba, not the United States.

Plaintiffs subsequently filed a motion to compel wide-ranging discovery (much of which was again untethered to their theory of jurisdiction), Dkt. 91, which this Court denied without prejudice, ordering plaintiffs to submit narrowed jurisdictional-discovery requests. September 14, 2023 Minute Order. Plaintiffs sent PAHO another set of jurisdictional discovery requests and, following conferral and a joint status report laying out the parties' discovery disputes as to each request, Dkt. 111, this Court ordered PAHO to respond to most of plaintiffs' requests, Dkt. 113.

On September 11, PAHO filed a notice of appeal to the D.C. Circuit of this Court's discovery order. Dkt. 114. The appeal has been docketed as number 24-7135.

## ARGUMENT

### I.    THIS COURT SHOULD CONFIRM THAT DISCOVERY WAS STAYED AUTOMATICALLY WHEN PAHO APPEALED THIS COURT'S DISCOVERY ORDER

PAHO's appeal of this Court's discovery order "divests [this] court of control over" the aspects of the case being appealed—here, the order. *Princz*, 998 F.2d at 1 (quotation marks

omitted).  "Exclusive jurisdiction to resolve the threshold issue" of whether this Court's discovery order is improper in light of PAHO's immunities now lies with the D.C. Circuit, and this "court may not proceed" with further litigation pertinent to the issues on appeal "until the appeal is resolved." *Id.*  The Supreme Court confirmed this just last year, explaining that "an interlocutory appeal[] divests the district court of its control over those aspects of the case involved in the appeal" and thus requires that a "district court must stay" proceedings relevant to the issues on appeal.  *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740-741 (2023).  Accordingly, where an appeal, as here, concerns a defendant's immunities from the burdens of litigation, including discovery, the appeal "automatically stays any further proceedings that would move this case towards trial or impose additional burdens of litigation on" PAHO, and a court should make clear that a stay pending appeal occurred automatically.  *United States v. Trump*, 706 F.Supp.3d 91, 93 (D.D.C. 2023).  Because this Court now lacks jurisdiction to compel PAHO's discovery responses, it should stay enforcement of the discovery order pending appeal (or, if it concludes it lacks jurisdiction to do so, issue a notice confirming that the order was stayed automatically).

## II.   ALTERNATIVELY, A STAY PENDING APPEAL IS WARRANTED UNDER THE TRADITIONAL FOUR-FACTOR TEST

Whether to issue a stay pending appeal involves considering four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether [the moving party] will be irreparably injured absent a stay; (3) whether [a] stay will substantially injure the other parties …; and (4) where the public interest lies."  *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quotation marks omitted).  Following the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), "the manner in which courts should weigh the four factors 'remains an open question' in this Circuit."  *Alabama Association of Realtors v. United States Department of Health & Human Services*, 539 F.Supp.3d 211, 213

(D.D.C. 2021) (quoting *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014)).  In particular, the D.C. Circuit has reserved the question of whether *Winter* can properly be read to suggest abandoning "a 'sliding scale' approach to weighing the four factors"—under which a weaker showing on one or more factors can be overcome with a stronger showing on one or more of the others.  *Archdiocese of Washington v. Washington Metropolitan Area Transit Authority*, 897 F.3d 314, 334 (D.C. Cir. 2018).  But, in the absence of clear guidance, "the district judges in this Circuit continue to … apply the sliding scale approach to determine whether a movant is entitled to an injunction [or stay] pending resolution of its appeal."  *NAACP v. Trump*, 321 F.Supp.3d 143, 146 (D.D.C. 2018).  Thus, a "lesser showing of likelihood of success on the merits" can support a stay where there is "a strong showing as to the other three factors, provided that the issue on appeal presents a 'serious legal question' on the merits."  *Cigar Association of America v. FDA*, 317 F.Supp.3d 555, 560 (D.D.C. 2018) (quoting *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (hereafter *WMATA*).  Here, a stay is warranted because PAHO would be irreparably harmed absent one, a stay would not harm plaintiffs and would advance the public interest, and PAHO's appeal raises (at an absolute minimum) serious legal questions.

## A.     PAHO Would Suffer Irreparable Harm Absent A Stay

Without a stay, PAHO would suffer irreparable harm because it would lose the intended protections of the IOIA, by being forced to respond to plaintiffs' discovery requests before the D.C. Circuit has determined the propriety of those requests.  The burden of responding, moreover, would be substantial, because the discovery the Court authorized is vast and the costs of responding would be enormous.  Requiring PAHO to shoulder that burden would "frustrate the significance and benefit of entitlement to immunity from suit," *Phoenix Consulting, Inc. v. Republic of Angola*,

216 F.3d 36, 39 (D.C. Cir. 2000).  Because the "burden of defending against a lawsuit," including

by responding to discovery requests, "is irreversible and constitutes harm," "this factor involving

likelihood of irreparable harm to the movant weighs in favor of … a stay" where IOIA immunity

is involved.  *Philipp v. Federal Republic of Germany*, 436 F.Supp.3d 61, 68 (D.D.C. 2020)

(addressing foreign sovereign immunity, which tracks IOIA immunity).

Recognizing all this, judges in this district regularly issue stays under similar

circumstances.  For example, in *Nyambal v. International Monetary Fund*, No. 1:12-cv-1037

(D.D.C.), Judge Sullivan twice stayed an order authorizing jurisdictional discovery, first pending

resolution of defendant's motion for reconsideration and then pending resolution of defendant's

appeal.  *See* Minute Order, *Nyambal*, (D.D.C. Aug. 7, 2013); Minute Order, *Nyambal* (D.D.C.

Mar. 19, 2014).  Indeed, courts in this district have relied on similar considerations even where the

defendant was not presumptively immune from the burdens of litigation.  *See, e.g.*, *Center for

International Environmental Law v. Office of U.S. Trade Representative*, 240 F.Supp.2d 21, 22

(D.D.C. 2003).

In short, denying a stay would irreparably harm PAHO.

**B.      Plaintiffs Will Not Suffer Any Cognizable Harm From A Stay**

By contrast, a stay will cause plaintiffs little if any harm.  While a stay would delay the

time when plaintiffs might receive the discovery they seek (or proceedings in the litigation more

generally), a "mere assertion of delay does not constitute substantial harm." *United States v. Philip

Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003), *abrogated on other grounds by Mohawk

Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009); *accord, e.g.*, *Akiachak Native Community v.

Jewell*, 995 F.Supp.2d 7, 18 (D.D.C. 2014).  Indeed, "[s]ome delay [is] occasioned by almost all

interlocutory appeals." *Philip Morris*, 314 F.3d at 622.  And delay carries little weight here given

that plaintiffs seek only monetary damages, not injunctive relief.  A stay is less likely to injure the non-moving party where they seek "only damages for past harm" rather than "injunctive relief against ongoing and future harm."  *Lockyer v. Mirand Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *accord Krell v. Queen Anne's County*, 2020 WL 416975, at *2 (D. Md. Jan. 27, 2020) (courts are "more likely to grant a stay where it will only delay the plaintiff's recovery as opposed to causing 'structural harm' that irreparably impairs the plaintiff's ability to recover").

### C.      A Stay Will Serve The Public Interest

The public interest favors a stay here to ensure that the immunity Congress granted to international organizations through the IOIA—immunity that enables such organizations to provide their vital services that enormously benefit the public—is not undermined.  Vitiating PAHO's immunities before the D.C. Circuit can weigh in, that is, would undermine the public interest in "vitaliz[ing] the status of international organizations of which the United States is a member and [] facilitat[ing] their activities." *International Refugee Organization v. Republic S.S. Corp.*, 189 F.2d 858, 861 (4th Cir. 1951).

### D.      PAHO's Appeal Presents At Least Serious Legal Questions

Because the other factors favor a stay, PAHO needs only show its "appeal presents a serious legal question on the merits" to warrant a stay.  *Alabama Association of Realtors*, 539 F.Supp.3d at 214.  Serious questions exist where the issues raised are "so serious, substantial, [and] difficult as to make them a fair ground of litigation and thus for more deliberative investigation." *Population Institute v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986), *quoted in Cigar Ass'n*, 317 F.Supp.3d at 561.  While this Court rejected PAHO's argument that plaintiffs' jurisdictional-discovery requests fail to satisfy the governing standard for such discovery, PAHO's arguments

are sufficiently plausible and weighty as to warrant a stay pending appeal.  *WMATA*, 559 F.2d at

844.  Indeed, PAHO's argument clears that threshold in three ways.

First, there is at least a serious question whether this Court improperly granted discovery

on a theory of jurisdiction not held to be plausibly alleged as a facial matter, i.e., not held to be

sufficient "as a matter of law to establish a *prima facie* case that [this] court ha[s] jurisdiction,"

*Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314 (11th Cir. 2009); *see also id.* (district court "abused its

discretion" in "granting discovery" on a facially insufficient theory of jurisdiction).  As explained,

this Court and the D.C. Circuit allowed this case to proceed only on the jurisdictional theory that

PAHO engaged in commercial activity in the United States by "moving [] money, for a fee,

between Cuba and Brazil" "using its Citibank account in Washington, D.C."  Dkt. 69 at 14, 16;

*accord Rodriguez*, 29 F.4th at 716.  This Court authorized jurisdictional discovery, however, on

the untested theory of jurisdiction that the relevant commercial activity in the United States was

PAHO's "planning, implementation, management, and oversight" of Mais Médicos from its D.C.

headquarters.  Dkt. 113, at 7; *see also id.* at 5 (granting discovery as "relevant to Plaintiffs' theory

that the administration of the program was carried on in D.C.").  Such discovery is an improper

intrusion on PAHO's presumptive immunity because no court has held as a facial matter than any

D.C.-based administration of Mais Médicos would constitute commercial activity.  Also, the D.C.

Circuit has already held that the administration of a public health program, even including

"processing … payments," is *not* commercial activity, *Jungquist v. Sheikh Sultan Bin Khalifa Al

Nahyan*, 115 F.3d 1020, 1029-1030 (D.C. Cir. 1997).

Second, there are at least serious questions regarding the grant of discovery regarding the

theory that PAHO "mov[ed] money, for a fee, between Cuba and Brazil" using U.S. banks.  For

all of the reasons stated in PAHO's opposition to plaintiffs' motion to compel, Dkt. 93, and in

PAHO's portions of the June 26, 2024 status report, Dkt. 111, PAHO maintains that discovery on this theory is foreclosed under D.C. Circuit precedent because plaintiffs have not established that the additional information sought is necessary, in light of the information already provided, to "verify allegations of specific facts crucial to an immunity determination," *Nyambal v. International Monetary Fund*, 772 F.3d 277, 281 (D.C. Cir. 2014).  Additionally, while this Court recognized that plaintiffs are not entitled to discovery based on the theory that any eventual transfer of PSC payments to U.S. bank accounts would constitute a "direct effect" in the United States, Dkt. 113 at 4, it nonetheless authorized discovery into both whether PSC payments "traveled through the U.S. and how" those payments "(if [they] indeed ended up in the United States) [w]ere used," *id.* at 4-5.  But PAHO has already shown that PSC payments were made exclusively into Brazilian banks, *see* Dkt. 93 at 19-20.  Thus, the alleged commercial activity—PAHO's receipt of a "fee" in connection with the "moving of money" between Cuba and Brazil—was carried on entirely outside of the United States, and any subsequent transfer to or use in the United States could only be an indirect effect of that activity.  There is thus no sound basis for discovery into such transfers.

Finally, there is at least a serious question regarding whether the receipt of PSC constitutes commercial activity.  The seriousness of this question is demonstrated by the amicus brief the United States filed with the D.C. Circuit in this case, explaining that an international organization's receipt of PSC payments "is public rather than commercial in nature and so does not come within the commercial activity exception."  U.S. Amicus Brief 17-18.  That is because "a national or multinational public program undertaken by an international organization at the request of member states is not" the kind of conduct in which private commercial actors typically engage, and therefore "[a]n international organization's receipt of program support costs made in connection

with such a public [program] is … public rather than commercial in nature." *Id.* at 25.  Because

the receipt of PSC payments is not commercial activity, plaintiffs are not entitled to any discovery

regarding the receipt or movement of such payments.

At the very least, PAHO has "raised questions going to the merits" of this Court's order,

questions "so serious, substantial, difficult and doubtful, as to make them a fair ground for

litigation and thus for more deliberative investigation."  *WMATA*, 559 F.2d at 844.  Given that,

and given that the other three factors also favor PAHO's request for relief, a stay pending appeal

is warranted.  *Id.* at 843.

**CONCLUSION**

This Court should confirm that the PAHO's appeal of the August 12, 2024 order stayed

enforcement of that order or, if the Court concludes that it has jurisdiction to do so, it should stay

that order pending the resolution of PAHO's appeal and vacate the September 27, 2024 deadline

for the parties to submit a joint status report.


September 25, 2024                                    Respectfully submitted,

                                                     /s/ *David W. Bowker*
                                                     David W. Bowker (#989309)
                                                     Daniel S. Volchok (#497341)
                                                     WILMER CUTLER PICKERING
                                                        HALE AND DORR LLP
                                                     2100 Pennsylvania Avenue N.W.
                                                     Washington, D.C. 20037
                                                     Telephone: (202) 663-6000
                                                     Facsimile: (202) 663-6363
                                                     david.bowker@wilmerhale.com